**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **v.** | | **Crim. Case No.: GJH-15-322** |
| | * | **Civil Action: GJH-19-2880** |
| **HARRY CRAWFORD,** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

Harry Crawford was advised by his counsel that he would be able to appeal any adverse ruling at sentencing regarding application of the murder cross-reference in U.S.S.G. § 2E2.1(c)(1) and/or the death resulting departure under U.S.S.G. § 5K2.1.

The presiding judge made rulings adverse to Mr. Crawford regarding application of the murder cross-reference in U.S.S.G. § 2E2.1(c)(1) and the death resulting departure under U.S.S.G. § 5K2.1.

The United States Court of Appeals for the Fourth Circuit (the "Fourth Circuit") dismissed Mr. Crawford's appeal based on its determination that Mr. Crawford had waived his right to appeal.

Mr. Crawford would have gone to trial if he was aware that he would be unable to appeal adverse rulings regarding application of the murder cross-reference and death resulting departure.

None of the above statements are seriously disputed. Although there are many complexities in the procedural history of this case, which the Government seeks to use in support

1

of its opposition to the pending motion, the Court's decision is drawn from those four basic statements. Mr. Crawford received ineffective assistance of counsel and he will be allowed to withdraw his guilty plea.

Defendant Harry Crawford is currently serving a sentence of 144 months of incarceration at the Federal Medical Center, Devens Prison Camp in Fort Devens, Massachusetts after pleading guilty to Collection of Extension of Credit by Extortion, in violation of 18 U.S.C. § 894, Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, and Health Care Fraud, in violation of 18 U.S.C. § 1347. ECF No. 464. Pending before the Court is Mr. Crawford's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 by a Person in Federal Custody ("Motion to Vacate"). ECF No. 551. A hearing was held regarding this motion on March 25, 2021. ECF No. 588. For the reasons that follow, Mr. Crawford's Motion to Vacate is granted.

## I.   BACKGROUND

### A.   Procedural Background

At the time of Mr. Crawford's trial, which resulted in a hung jury, and his later plea, there were two operative charging documents: a Third Superseding Indictment (the "Health Care Fraud Indictment"), ECF No. 143, and what was at times referred to as the Supplemental Third Superseding Indictment (the "Extortion Indictment"), ECF No. 146.[1] The Health Care Fraud Indictment charged Mr. Crawford with Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. § 1349, Health Care Fraud, in violation of 18 U.S.C. §§ 2 and 1347, Aggravated Identity Theft, in violation of 18 U.S.C. §§ 1028A(a) and 2, Conspiracy to Defraud the United

---

[1] This division was the result of the Court's granting of Mr. Crawford's severance motion, which severed for trial the charges in the Health Care Fraud Indictment, ECF No. 143, from the charges in the Extortion Indictment, ECF No. 146.

States, in violation of 18 U.S.C. § 371, and four counts of Failure to File Income Tax Return, in violation of 26 U.S.C. § 7203. ECF No. 143. The Extortion Indictment charged Mr. Crawford with Collection of Extension of Credit by Extortionate Means, in violation of 18 U.S.C. §§ 894 and 2, and Use of Interstate Facilities for Extortion, in violation of 18 U.S.C. §§ 1952(a)(2) and (3) and 2. ECF No. 146.

Mr. Crawford went to trial on the Extortion Indictment on September 26, 2016. ECF No. 305. On October 11, 2016, the jury announced that it was unable to decide either count in the Extortion Indictment. ECF No. 320. A mistrial was declared, and a new trial date was scheduled by the Court. ECF No. 331. Prior to his second trial date, however, Mr. Crawford entered into a plea agreement, wherein he pleaded guilty to two counts in the Health Care Fraud Indictment, Conspiracy to Commit Health Care Fraud and Conspiracy to Defraud the United States, and to Collection of Extension of Credit by Extortionate Means in the Extortion Indictment. ECF No. 344.

### B.   Statement of Facts[2]

A statement of facts attached to the plea agreement described the conduct supporting each of the guilty pleas. Regarding the Extortion Indictment, Mr. Crawford owned and operated RX Resources and Solutions ("RXRS"), a provider of durable medical equipment, and employed an individual named Matthew Hightower. ECF No. 344 at 11. In 2013, Mr. Crawford approached Mr. Hightower to facilitate a loan to Mr. Crawford's long-time friend, David Wutoh. *Id.* After Mr. Wutoh promised a significant rate of return, a loan was arranged. *Id.* However, Mr. Wutoh did not repay the funds or the increasing rates of interest, and Mr. Crawford and Mr. Hightower began making express and implicit threats of violence in order to induce Mr. Wutoh

---

[2] The parties agreed that these facts could have been proven at trial beyond a reasonable doubt.

to repay the debt. *Id.* at 11–13. A number of text messages containing such threats were sent by Mr. Crawford to Mr. Wutoh. *Id.* On or about September 22, 2013, Mr. Wutoh was murdered. *Id.* at 14–15. Mr. Crawford and Mr. Hightower exchanged cryptic text messages just before and soon after the murder. *Id.* at 15. On September 22, 2016, Mr. Hightower was convicted of extorting and murdering Mr. Wutoh. ECF No. 344 at 16.

With regard to the conviction for Health Care Fraud, in violation of 18 U.S.C. § 1347, Mr. Crawford, Mr. Hightower, and another individual submitted claims to Medicaid that falsely and fraudulently sought payment for medical supplies that had not been provided, were not delivered in the amounts billed, or had not been authorized by a doctor. *Id*. at 16–18.

Finally, with regard to the conviction for Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371, Mr. Crawford did not file timely income tax returns reporting the money he earned from RXRS for the calendar years 2010 through 2013. *Id.* at 18–19.

### C.      Provisions of the Plea Agreement

The signed plea agreement contained a discussion of the parties mutual understanding of the applicable sentencing guideline factors, noting areas of agreement and departure. Regarding the counts in the Health Care Fraud Indictment, the parties agreed that, after the two counts grouped together, the offense level for those counts would be 24. ECF No. 344 at 4. There was disagreement as to the Extortion Indictment count, however. The Government indicated that it would contend at sentencing that the cross-reference to the first-degree murder guideline found in U.S.S.G. § 2E2.1(c)(1) was applicable and that the base offense level would be 43. ECF No. 344 at 4. The plea agreement noted Defendant's objection to the application of the cross-reference and stated an intent to argue that the base offense level for the Extortion Indictment count was 20. *Id*. The agreement further noted that, pursuant to multiple count rules in the

sentencing guidelines, if the Defendant's argument prevailed, the total offense level for all counts would be 26. *Id*. at 4-5. After consideration of a two-level reduction for acceptance of responsibility, the paragraph addressing Defendant's offense level concluded by stating "The anticipated final offense level is either 41 or 24." *Id*. at 5. The Government also reserved the right to seek a departure under U.S.S.G. § 5K2.1. *Id*.

Central to the instant motion, Mr. Crawford's plea agreement included a "Waiver of Appeal" that stated, *inter alia*:

> In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:
>
> . . . .
>
> b.     The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range except as noted below, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), **except that the Defendant may appeal the Court's finding that U.S.S.G. § 2E1.1(c)(1) applies to Count One, ECF 146 (Collection of Credit by Extortionate Means) resulting in a base offense level of 43, and the Defendant may also appeal any upward departure under U.S.S.G. § 5K2.1 (Death)**.

*Id.* at 7-8. (emphasis added).

The plea agreement and the relevant appellate waiver provision were discussed at length at the November 22, 2016 Rearraignment ("Rule 11 Hearing") before the Honorable Judge Marvin J. Garbis. *See* ECF No. 481. A reading of the Rule 11 Hearing transcript indicates that, at that time, consistent with the plea agreement, the parties contemplated only two potential outcomes as to the offense level on the Extortion Indictment count: an acceptance of the position offered by the Government that the base offense level would be 43, based on a cross-reference for first-degree murder, or a base offense level of 20 if the Government's position was rejected.

5

ECF No. 481 at 37 (AUSA stating "That is the position as contained in the plea agreement, Your Honor. And the government will not ask for or seek any other calculations, save those contained in the plea agreement"); *but see id.* (Judge Garbis stating "Well, you're saying you're not going to seek. But you recognize that you can contend for 43, and I could end up at 38.").

### D.    Sentencing

Mr. Crawford's sentencing hearing was held on March 28, 2017. ECF No. 445. At sentencing, the Government sought to enhance Mr. Crawford's sentence based on the murder of Mr. Wutoh. *See* ECF No. 479 at 16–17, 20–41, 51–56.

Judge Garbis found that "the death of Mr. Wutoh was relevant conduct" with respect to the sentencing of Mr. Crawford, *id.* at 64, but "d[id] not find Mr. Crawford had any intention to harm Mr. Wutoh in any physical sense[,]" rather he was reckless, *id.* at 67.[3] Judge Garbis sentenced Mr. Crawford using two alternative calculations, both of which took into account the death of Mr. Wutoh: (1) using the cross-reference in U.S.S.G. § 2E2.1(c)(1); and (2) using the U.S.S.G. § 5K2.1 death adjustment. ECF No. 479 at 67–68. As to the cross-reference calculation Judge Garbis stated that:

> I think, **if we go the cross-reference manner, I would find that, using § 2A1.1, I believe that we would here have, as I believe happened with Hightower, would be that the murder was second-degree murder, not first-degree murder**, and I would depart downward significantly. Although I guess it's not important, **I'm not departing downward from the 43 of a first-degree murder; I'm departing downward from the second-degree murder, 38.[4]** If

---

[3] Between the date of Mr. Crawford's Rule 11 Hearing and his sentencing date, Judge Garbis determined in regard to the sentence of Mr. Crawford's co-defendant, Mr. Hightower, that the murder of Mr. Wutoh was second-degree murder. ECF No. 479 at 20–21; *see also* ECF No. 359 at 2. Consistent with that finding, the Government acknowledged that a similar finding should apply to Mr. Crawford. ECF No. 479 at 20–21. In so doing, the parties were moving away from the assumption underlying the original plea agreement, that Mr. Crawford, if held responsible for the murder, would be sentenced based on the cross-reference to first-degree murder.

[4] This approach does not appear to be consistent with the sentencing guidelines. The relevant cross-reference is § 2E2.1(c)(1), which reads as follows: "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." U.S.S.G. § 2E2.1(c)(1) (emphasis added). The guideline does not

that were the case, I would end up with a starting guideline of 36 with the two levels, and I would find it quite reasonable to depart downward five levels on the cross-reference.

*Id.* at 67 (emphasis added). And, as to the § 5K2.1 death adjustment, Judge Garbis stated that:

> But, if I went the other direction, which is to start with the extortion guideline of 20, I would add nine levels because of the discharge of the firearm, which I find is relevant conduct, or, again, I did not find Mr. Crawford knew specifically that was going to happen, would take into account the bodily injury, would get us to Offense Level 29. I would have two levels off for the acceptance, which is 27, and I would use the § 5K death adjustment of four and end up in the same place, which would be 31.

*Id.* at 67–68. Thus, the two alternative calculations used by Judge Garbis ended at the same final offense level, an offense level 31, which led to an advisory guideline range of 121 to 151 months. *See id.* at 68; *see also* U.S.S.G. ch. 5, pt. A. Judge Garbis sentenced Mr. Crawford to 144 months, which was within that guidelines range. ECF No. 479 at 102.

### E.    Appeal

Mr. Crawford appealed Judge Garbis's decision on April 7, 2017, ECF No. 466, and filed his opening brief on August 11, 2017, Br. of Appellant, *United States v. Crawford*, No. 17-4213 (4th Cir. Aug. 11, 2017). Mr. Crawford identified two issues being presented by the appeal:

1. Did the district court err in holding Mr. Crawford accountable for a murder as part of "jointly undertaken criminal activity" under U.S.S.G. § 1B1.3(a)(1)(B), without making the requisite factual findings to support it— to wit, by failing to identify with particularity the "scope" of criminal activity that Mr. Crawford jointly undertook, as U.S.S.G. § 1B1.3(a)(1)(B) requires?

2. Did a sufficient factual basis exist to support a finding that actual physical violence was within the scope of Mr. Crawford's jointly undertaken extortion activity, where the government produced no evidence that the scope extended beyond verbal threats to acts of physical violence?

Br. of Appellant at 6, *United States v. Crawford*, No. 17-4213 (4th Cir. Aug. 11, 2017).

---

contemplate a cross-reference from § 2E2.1 to § 2A1.2 for Second Degree Murder and a base offense level of 38, although that is what Judge Garbis did in this case.

The Government moved to dismiss the appeal on August 24, 2017, arguing that (1) Mr. Crawford's arguments regarding Judge Garbis's use of the murder cross-reference were precluded by the waiver of appeal included in the plea agreement; and (2) Mr. Crawford had waived any argument regarding the validity of Judge Garbis's sentencing calculation under U.S.S.G. § 5K2.1 by not including such arguments in the opening brief. *See* U.S. Mot. to Dismiss Appeal & Stay Briefing Schedule at 11–17, *United States v. Crawford*, No. 17-4213 (4th Cir. Aug. 24, 2017). Mr. Crawford opposed the motion to dismiss on September 5, 2017, arguing that Mr. Crawford had waived neither his challenge to Judge Garbis's use of the murder cross-reference under U.S.S.G. § 2E2.1(c)(1) nor his challenge to Judge Garbis's calculation under U.S.S.G. § 5K2.1. Def. Harry Crawford's Opp. to the Government's Mot. to Dismiss Appeal, *United States v. Crawford*, No. 17-4213 (4th Cir. Sept. 5, 2017). The Government replied on September 8, 2017. U.S.'s Reply to Def's Opp. to the Mot. to Dismiss Appeal, *United States v. Crawford*, No. 17-4213 (4th Cir. Sept. 8, 2017). The Fourth Circuit granted the Government's Motion to Dismiss Appeal, holding that (1) "Crawford knowingly and voluntarily waived his right to appeal and that his challenge to the application of the murder cross-reference falls squarely within the scope of his waiver of appellate rights[;]" and (2) "Crawford has abandoned" his challenge to the application of the death departure under U.S.S.G. § 5K2.1. Order at 1–2, *United States v. Crawford*, No. 17-4213 (4th Cir. Jan. 19, 2018).

### F. Present Dispute

Mr. Crawford filed the instant Motion to Vacate, ECF No. 551, on October 1, 2019, and filed a supplemental memorandum of law in support of that motion on February 17, 2020, ECF No. 562. Mr. Crawford requests that the Court vacate his conviction and order a new trial on the basis of ineffective assistance of counsel. ECF No. 551 at 4. Specifically, Mr. Crawford argues

that his trial counsel advised him that he would be free to appeal any adverse ruling at sentencing in relation to either the murder cross-reference or the death resulting departure, and, based on that advice, Mr. Crawford pleaded guilty. ECF No. 562 at 3. The Government responded in opposition on July 17, 2020. ECF No. 564. Mr. Crawford replied on October 27, 2020. ECF No. 569. The Court conducted a virtual motion hearing on March 25, 2021. ECF No. 588.

## II.      STANDARD OF REVIEW

To be entitled to relief under 28 U.S.C. § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Mr. Crawford contends here that he is entitled to relief under § 2255 because he received ineffective assistance of counsel in violation of the Sixth Amendment.[5]

Under the Sixth Amendment to the United States Constitution, a criminal defendant has the right to effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 (1970). This right "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). To establish a redressable claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient and (2) prejudice resulted from counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 692 (1984). As to

---

[5] Mr. Crawford also argues that, because of his counsel's ineffective assistance, his guilty plea was unknowing and involuntary and thus in violation of his Due Process rights. *See* ECF No. 562 at 12 ("To be valid, a guilty plea must be a 'knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances and likely consequences.' *Brady v. United States*, 397 U.S. 742, 748 (1970). A guilty plea 'cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' *McCarthy v. United States*, 394 U.S. 459, 466 (1969).") However, this argument rises and falls with Mr. Crawford' ineffective assistance of counsel claim, *Ross v. Wolfe*, 942 F. Supp. 2d 573, 581 (D. Md. 2013) ("[Defendant's] claim of ineffective assistance of counsel is inextricably linked to his claim of an unknowing and involuntary guilty plea."), and, consequently, the Court will not discuss Mr. Crawford's Due Process claim separately.

deficiency, a deficient performance is one that falls below an objective standard of reasonableness, such that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted); *see also United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004). Courts, however, are "highly deferential" to counsel's tactical decisions and petitioners must overcome the strong presumption that the challenged action falls within "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

As to prejudice, a counsel's deficient performance is prejudicial when "there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" does not necessarily mean that "counsel's deficient conduct more likely than not altered the outcome in the case[;]" rather, the reasonable probability standard represents a lower threshold. *Id.* at 693.

## III.   ANALYSIS

For all the complexities presented by the procedural history of this case, Mr. Crawford's actual claim is remarkably simple. Mr. Crawford asserts that (1) he was told that the plea agreement protected his right to appeal any adverse ruling regarding application of the murder cross-reference in U.S.S.G. § 2E2.1(c)(1) and/or the death resulting departure under U.S.S.G. § 5K2.1; (2) that he would have gone to trial (again) without that assurance; (3) that he received an adverse ruling as to the murder cross-reference and the death resulting departure; and (4) that his appeal was nonetheless dismissed. Both the record and logic support his claim.

The Government's responses, though legitimately raised, are far more complex and, at times, strained. Specifically, the Government contends that (1) any mistaken advice given by counsel was negated by the plea colloquy at the Rule 11 Hearing; and (2) Mr. Crawford's right to

appeal was adequately preserved at the trial level, consistent with the advice he was given, but was later waived at the appellate level, meaning that if he suffered from deficient counsel it was at the appellate level, and no claim of ineffectiveness by appellate counsel is before this Court.

The Court will first address the core of Defendant's claim before turning to the Government's most significant arguments.

### A.    Deficient Performance

The core of Mr. Crawford's Motion is that he was misadvised regarding his ability to appeal an application by the presiding judge of the murder cross-reference in U.S.S.G. § 2E1.1(c)(1) and the death resulting departure under § 5K2.1. Mr. Crawford submitted an affidavit in support of his Motion, which states that: "At no time [during] consultation with Trial Counsel, in association with prep[a]ration for guilty plea negotiation and/or acceptance of guilty plea, was I advised that the acceptance[ ]of my guilty plea would warrant that I was waiving my right to appeal the application of the murder cross-application." ECF No. 562-1 at 2.

Mr. Crawford's statements are supported by the affidavit of his counsel, Ms. Talbott, which similarly states that:

> Under Mr. Crawford's plea agreement, Mr. Crawford and the government disagreed about the applicability of the murder cross-reference, under USSG § 2E1.1(c)(1), and the death resulting departure, under USSG § 5K2.1. During conversations with Mr. Crawford prior to his entering guilty pleas, I specifically advised him that he would retain his right to appeal **any adverse ruling** at sentencing regarding application of the murder cross-reference under USSG § 2E1.1(c)(1) and/or the death resulting departure under USSG § 5K2.1.

ECF No. 562-2 at 2 (emphasis added).

Finally, the affidavit of Mr. Outlaw, who served along with Ms. Talbott as co-counsel, adds additional support to Mr. Crawford's contention that he was provided inaccurate advice and clarifies the nature of that advice:

> During conversations I had with Ms. Talbott, prior to advising Mr. Crawford about

the plea agreement, Ms. Talbott and I agreed that the plea agreement preserved a right to appeal **if the judge applied the cross-reference in USSG § 2E2.1(c)(1) in any way**. We believed that **any application of the cross-reference in USSG § 2E2.1(c)(1) would produce a base offense level of 43;** therefore, the phrase, "resulting in a base offense level of 43" in the plea agreement was redundant in our view, and did not constrict in any way the appeal rights we believed that Mr. Crawford retained. Ms. Talbott and I were in agreement in this belief and interpretation of the cross-reference language was to be communicated to Mr. Crawford as part [of] our advisement on the plea agreement.

ECF No. 569-1 at 2 (emphasis added).[6]

In fairness to counsel, Mr. Outlaw's statement that "any application of the cross-reference in U.S.S.G. § 2E2.1(c)(1) would produce a base offense level of 43" is consistent both with what the parties appeared to contemplate at the time of the Rule 11 Hearing and with the plain language of the relevant guideline. Section § 2E2.1(c)(1) states that "If a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial maritime jurisdiction of the United States, apply § 2A1.1 (First Degree Murder)." U.S.S.G. § 2E2.1(c)(1). Application of § 2A1.1 leads to a base offense level of 43. Indeed, there is no cross-reference under § 2E2.1(c)(1) that produces any outcome other than a reference to § 2A1.1 and a base offense level of 43, which is precisely what counsel advised his client. Judge Garbis, nonetheless, appears to have applied § 2A1.2 and started with a base offense level of 38. ECF No. 479 at 67. Notwithstanding the enormous respect and admiration this Court has for its now retired colleague, this was likely an inaccurate application of the guidelines.

But trial judges make errors. That is why appellate courts exist and why trial lawyers aim

---

[6] On appeal to the Fourth Circuit, Mr. Crawford's appellate counsel argued that this was the correct interpretation, *see* Def. Harry Crawford's Opp. to the Government's Mot. to Dismiss Appeal at 2–3, *United States v. Crawford*, No. 17-4213 (4th Cir. Sept. 5, 2017) (stating that the district court applied U.S.S.G. § 2A1.1, and "[t]he § 2A1.1 guideline sets out one and only one base offense level: 43"), but ultimately lost on that issue, Order at 1, *United States v. Crawford*, No. 17-4213 (4th Cir. Jan. 19, 2018).

to protect their client's appellate rights and properly advise them as to what those rights are. It is there that counsel was ineffective. The advice that counsel gave Mr. Crawford, that he could appeal "any" adverse application of the cross-reference, was erroneous. Judge Garbis made such an application and, when Mr. Crawford attempted to appeal, the Fourth Circuit found that "his challenge to the application of the murder cross-reference falls *squarely* within the scope of his waiver of appellate rights." Order at 1, *United States v. Crawford*, No. 17-4213 (4th Cir. Jan. 19, 2018) (emphasis added). The plea agreement provided the opportunity to appeal from an application of the cross-reference that led to a base offense level of 43 and not from "any" adverse application as Mr. Crawford was incorrectly led to believe by his counsel.

Given the inaccuracy of the advice Mr. Crawford received, the Court must determine "whether that advice was within the range of competence demanded of attorneys in criminal cases." *McMann*, 397 U.S. at 771; *see also Strickland*, 466 U.S. at 669 ("[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness[.]"). In answering this question, the Court reviews the circumstances of an analogous case, *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003), and finds the Sixth Circuit's conclusion on the deficiency issue in that case persuasive.

In *Maples*, the defendant filed, in state court, a motion to dismiss the charges against him on the grounds that, *inter alia*, the state's 180-day speedy-trial rule was violated. *Id.* at 434. The state court denied his motion. *Id.* The defendant later entered into a plea agreement, relying on the advice of his counsel that the plea agreement would not prevent him from arguing on appeal that his speedy-trial rights were violated. *Id.* at 435. When the defendant appealed to the state appellate court, however, that court held that "Defendant's unconditional guilty plea waives review of the claimed violation of the 180-day rule . . . and his claimed violation of his

constitutional and statutory right to a speedy trial . . . ." *Id.* (ellipses in original). The defendant

then appealed to the state supreme court but was denied leave to appeal in a summary order. *Id.*

Eventually, after attempting several other avenues of relief, the defendant in *Maples* filed a

petition for habeas corpus in federal district court, claiming "his counsel was constitutionally

ineffective for misadvising him about his ability to raise the speedy-trial issue after pleading

guilty." *Id.* at 435–36. The district court denied defendant's petition, but the Sixth Circuit

vacated that decision and held that:

> [the defendant's] trial counsel provided legal advice that, as the Michigan Court
> of Appeals held, was patently erroneous. Contrary to his counsel's
> representations, [the defendant's] guilty plea precluded him from appealing his
> speedy-trial claim. Such advice certainly falls below an "objective standard of
> reasonableness" and cannot possibly be considered "sound trial strategy."

*Id.* at 439.

Like in *Maples*, the advice of Mr. Crawford's trial counsel was erroneous. Contrary to

Mr. Crawford's counsel's representations, Mr. Crawford's guilty plea precluded him from

appealing the use of the murder cross-reference, U.S.S.G. § 2E1.1(c)(1), as applied by Judge

Garbis. Thus, Mr. Crawford was not merely given a bad prediction about what the Fourth Circuit

would do; rather, he was given advice that included a materially mistaken interpretation of the

appellate rights being waived in the Waiver of Appeal. *Ross v. Wolfe*, 942 F. Supp. 2d 573, 581

(D. Md. 2013) ("There is a difference between a bad prediction within an accurate description of

the law and gross misinformation about the law itself." (citation omitted)). Consequently, "[s]uch

advice certainly falls below an 'objective standard of reasonableness' and cannot possibly be

considered 'sound trial strategy.'" *Maples*, 340 F.3d at 439.

The Court finds that Mr. Crawford's counsel's inaccurate advice regarding whether Mr.

Crawford could appeal Judge Garbis's use of the murder cross-reference under U.S.S.G. § 2E1.1

constitutes deficient performance.

## B.      Prejudice

"To establish *Strickland* prejudice a defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Lafler*, 566 U.S. at 163 (internal quotation marks and citations omitted). In the

context of ineffective counsel during plea negotiations, a defendant "must show the outcome of

the plea process would have been different with competent advice." *Id.* Specifically, in order to

succeed on a claim that the ineffective assistance of counsel led to "the improvident acceptance

of a guilty plea," a defendant must show "that there is a reasonable probability that, but for

counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going

to trial." *Id.* (internal quotation marks and citations omitted) (alteration in original); *see also Hill*

*v. Lockhart*, 474 U.S. 52, 59 (1985). Mr. Crawford has presented three affidavits stating just that.

ECF No. 562-1 at 2 ("At no time [during my] consultation with Trial Counsel . . . was I advised

that the acceptance of[ ]my guilty plea would warrant that I was waiving my right to appeal the

application of the murder cross-application. Had Trial Counsel not misadvised me of the

pertinent fact I would ha[ve] insisted on exercising my Constitutional Right to proceed trial.");

ECF No. 562-2 at 3 ("It is my belief based on conversations with Mr. Crawford prior to his

entering his guilty pleas that if he knew the appellate waiver precluded him from appealing an

adverse ruling from the Court at sentencing regarding the murder cross-reference . . . he would

not have pleaded guilty in this case."); ECF No. 569-1 at 3 (same).

In addition to Mr. Crawford's and his counsel's affidavits stating that Mr. Crawford

would not have pleaded guilty, logic supports that assertion. *See United States v. Bui*, 795 F.3d

363, 368 (3d Cir. 2015) (holding that the defendant "satisfied the second prong of the *Strickland*

test by asserting that there is a reasonable probability that, but for counsel's errors, he would not

have pleaded guilty and would have insisted on going to trial[,]" but also acknowledging the

defendant's statement was supported by logic (internal quotation marks and citations omitted)).

Whether Mr. Crawford should be held accountable for the murder of Mr. Wutoh was a deeply

disputed issue even during Mr. Crawford's original jury trial that ended in a mistrial. *See* ECF

No. 153 (Defendant Crawford's Motion *in Limine* to Exclude Evidence of Death of D.W. from

Extortion Trial); ECF No. 170 at 21 (stating in the Government's opposition to Mr. Crawford's

Motion *in Limine* that "Crawford argues that, 'the government has failed to allege or provide

facts or evidence suggesting that Crawford intended, performed, or attempted to perform the

assault or murder of D.W.'"). That dispute was memorialized in the plea agreement. ECF No.

344 at 4 ("The defendant objects to the cross-reference and contends the base offense level is 20

(U.S.S.G. § 2E1.1)"); *see also* ECF No. 481 at 23–24. Additionally, the parties spent a

significant amount of time during the sentencing hearing debating whether the murder of Mr.

Crawford was within the scope of the extortion and Mr. Crawford's level of accountability. *See,*

*e.g.*, ECF No. 479 at 41–52. In fact, the only statement Mr. Crawford chose to make at the

sentencing hearing was to declare numerous times that he had no role in Mr. Wutoh's murder. *Id.*

at 96 ("we never harmed each other—never"); *id.* at 97 ("at no point in time did I ever think that

Dave would come to any harm"); *id.* at 98 ("I'm sorry to what happened to Dave. I had no

knowledge of it. I had no input in it. . . . I would not let harm come to my friend of 26 years over

a small amount of money."); *id.* ("I take responsibility [for] everything else that happened. I

blame no one else. But I would only like to say that I'm sorry for what happened to my friend,

Dave, and that I did not involve myself in it. I was not part of it . . .  and I regret what happened

to him."). Finally, the only carve-out in the appellate waiver was to preserve Mr. Crawford's

ability to appeal two different ways in which Judge Garbis could use Mr. Wutoh's murder in

calculating Mr. Crawford's sentence. ECF No. 344. Considering this background, logic supports

the undisputed evidence that had Mr. Crawford known that there was a possibility that Judge

Garbis could apply the murder cross-reference under U.S.S.G. § 2E2.1(c)(1) in a way Mr.

Crawford could not appeal, Mr. Crawford would not have pleaded guilty and instead would have

gone to trial.[7] *See Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("Judges should . . . look to

contemporaneous evidence to substantiate a defendant's expressed preferences" regarding going

to trial.). Thus, the Court finds the deficient performance of Mr. Crawford's counsel resulted in

prejudice under the second prong of *Strickland*.

### C.    Government Arguments

Based on the above, Mr. Crawford has established that he received deficient advice that

led to him accepting a plea he otherwise would not have. The Government, while not directly

challenging the evidence establishing the deficient nature of the advice given to Mr. Crawford or

the fact that he would not have entered the plea agreement without having received the deficient

advice, points to other phases in the process that, in the Government's view, remedied any

deficiency in advice or sufficiently mitigated the prejudice suffered. Specifically, the

Government argues (1) that the plea colloquy presided over by Judge Garbis clarified the issue of

the cross-reference and death enhancements and (2) the ineffective assistance, if any, was at the

appellate level where the issues could have been raised notwithstanding the plea waiver. The

Court rejects both arguments for the reasons stated below.

### 1.    Plea Colloquy

While the Government does not appear to contest that Mr. Crawford's counsel gave him

---

[7] It is unnecessary to discuss whether the result of a second trial would have been different than the result of the plea bargain. *See Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). While it is true that a defendant might need to show that he would have been better off going to trial if his decision about going to trial turned on his prospects of success and those were affected by the attorney's error, "not all errors . . . are of that sort." *Id.* Here, Mr. Crawford's counsel's error had nothing to do with his prospects of success at trial but was instead an error that "affected [Mr. Crawford's] understanding of the consequences of pleading guilty." *Id.*

inaccurate advice about the meaning of the appellate waiver contained in the plea agreement, the Government argues that any deficiency was cured by the clarity of the language in the plea agreement itself and/or the plea colloquy during the Rule 11 Hearing. This argument is unpersuasive.

It is true that a defendant's ineffective assistance of counsel claim based on his counsel's failure to correctly explain the terms of an appellate waiver will fail where, notwithstanding counsel's allegedly defective advice, the petitioner fully understood the appellate waiver's effect at the time he pleaded guilty. *Thompson v. United States*, No. 2:07-CR-00231, 2010 WL 4642002, at *1, *3–*4 (S.D.W. Va. Sept. 28, 2010) (finding that the defendant was not denied effective assistance of counsel with respect to his appellate waiver where, despite his counsel's inaccurate explanation of the appellate waiver, the defendant had significant experience in the criminal justice system and participated in a lengthy, thorough, and accurate colloquy in which he knowingly and voluntarily voiced his understanding of the terms of his plea agreement), *report and recommendation adopted*, No. CIV.A. 2:09-1520, 2010 WL 4628313 (S.D.W. Va. Nov. 8, 2010); *see also Araromi v. United States*, No. EP-09-CR-3143-KC-1, 2014 WL 1652595, at *8 (W.D. Tex. Apr. 23, 2014). Specifically, where a court accurately explains the terms and consequences of the waiver of appeal and the defendant states on the record he understands them, then the defendant is barred from later arguing that he did not really understand how the appeal waiver would operate. *Thompson*, 2010 WL 4642002, at *3–*4 (finding the plea colloquy remedied any ineffective assistance where the following dialogue took place: "Q: Part of your agreement is that if the court sentences you to a term of imprisonment within the sentencing guidelines range that applies in your case . . . , you forever waive your right to appeal the reasonableness of that sentence. Do you understand that? A: Yes.").

Moreover, "[a]n explicit, unambiguous waiver of appeal remains valid regardless of whether the district court addressed it directly at the defendant's plea hearing where the record indicates that the defendant has read and understood his plea agreement and has raised no questions about the waiver." *Araromi*, 2014 WL 1652595, at *8 (internal quotation marks and citations omitted); *cf. United States v. Hunter*, 319 F. App'x 290, 292 (4th Cir. 2009) (finding an appellate waiver to be enforceable where "the language of the appellate waiver and plea agreement is clear and unmistakable and [the defendant] acknowledged his familiarity and understanding of the waiver at his Fed. R. Crim. P. 11 hearing").

In the instant case, however, the terms of the appellate waiver contained in the plea agreement were not unambiguous and the discussion of the waiver at the Rule 11 Hearing may have only enhanced the confusion. As an initial matter, Judge Garbis recognized multiple times throughout the Rule 11 Hearing that the plea agreement and the included waiver of appeal were complex and in need of clarification. *See, e.g.*, ECF No. 481 at 3–4 ("I have certainly read the plea agreement, which has certain complexities."); *id.* at 19 ("I'm sure there's certain things we're going to have to have clarified as to what is being agreed to and what isn't."); *id.* at 34 ("Obviously, I have no concern with the defendant preserving his appellate rights. I just want to make sure I understand the agreement."); *id.* at 36 (stating that "you can see the benefit of discussing [the waiver of appeal] now, so we're not arguing about it later").

Second, although it is possible for a Rule 11 Hearing to cure a defendant's counsel's defective advice, that did not occur in this case. Where a defendant has received inaccurate advice regarding the terms and consequences of a waiver of appeal, a Rule 11 Hearing will only remedy such defective advice if the colloquy clearly and accurately describes the terms and consequences of such a waiver such that the defendant fully understands the waiver's effects.

Here, while Judge Garbis did eventually present an accurate statement of the meaning of the appellate waiver, this was only after the Court and the Government engaged in exchanges containing multiple incorrect or ambiguous statements regarding the meaning of the waiver.

A brief review of the colloquy makes the point. The discussion about the appellate waiver began with the prosecutor correcting Judge Garbis regarding its meaning:

> THE COURT:[ ] So if I depart up, if I depart upward—I don't know what the rights are in terms of an appeal from a variance. But if in determining the guidelines I would depart upward, I gather the defendant could appeal from any upward departure? Not just for death, but any upward departure.
>
> MR. ZELINSKY: No, Your Honor. The defendant may appeal only an upward departure under 5K2.1 for death or an upward departure as a result of the cross-application to the murder guidelines.

ECF No. 481 at 35.

> Judge Garbis then attempted to restate the meaning of the appellate waiver:

> THE COURT: Now, however, and again, if in regard to the extortion guidelines I determine a guideline above 20, as I understand it he would be free to appeal from that, assuming – well, I mean, I'm not talking about something that doesn't appear in this case. If I based that upon the cross-reference certainly he could appeal that, correct?
>
> MR. ZELINSKY: Yes, Your Honor. If you base that upon the cross-reference.

*Id.* at 35–36 (emphasis added). Here, the Court's statement and the Government's response are, at best, ambiguous in light of what occurred at sentencing. Judge Garbis ultimately did apply "the cross-reference" to "determine a guideline above 20" and Defendant was not allowed to appeal because Judge Garbis used the cross-reference to establish a base offense level of 38 and not 43 as the plea agreement (and the guidelines) anticipated.

Judge Garbis next made another statement that was again corrected by the prosecutor:

> THE COURT: And as I understand, we are ultimately going to discuss, to find an extortion guideline above 20, there's a number of ways that that can happen. I could use the cross-reference. I could use the second degree cross-

reference. I could use a cross-reference and then depart based on various factors. All of that, he can appeal?

> MR ZELINSKY: No, Your Honor. The only thing that he may appeal is a finding, as contained in Paragraph B on Page 8 [of the plea agreement] under United States Sentencing Guideline 2E2.1(c)(1) and a departure under 5K2.1. Those are the only sentencing guideline issues that he may appeal.

*Id.* at 36. Judge Garbis then provided a hypothetical where, during sentencing, his sentencing guidelines calculations result in an offense level of 38, *id.* at 37 ("But you recognize that you can contend for 43, and I could end up at 38.")—which is ultimately what happened—to which the Government responds: "if the Court does not get there through 5K2.1 or 2E2.1(c)(1), then the defendant has waived his right to appeal that calculation, Your Honor[,]" *id.*[8]

Finally, Judge Garbis summarizes his understanding and gains agreement from both counsel:

> THE COURT: Okay. So the bottom line is this. And I guess I ask the defense. As I see it, the government is going to ask for a Level 43, first-degree cross-reference, that that's their ability to do that. The defense is free to argue anything that would lower the offense level from the 43, whatever argument it is, and the only problem is that you could only appeal from the 43. Is that right?
>
> MR. ZELINSKY: That's correct.
>
> THE COURT: Okay. Mr. Outlaw, is that—do you understand that?
>
> MR. OUTLAW: Yes, Your Honor. I understand that we are only allowed to appeal if the Court imposes the enhancements on the cross-reference identified in the plea agreement or the death enhancement.

*Id.* at 39.

---

[8] Once again, the Government's response is, at best, ambiguous because Judge Garbis did ultimately get to an offense level of 38 through U.S.S.G. § 2E2.1(c)(1), but the Fourth Circuit determined that Mr. Crawford had waived his appeal on that issue in the plea agreement. *See* ECF No. 479 at 67; Order at 1, *United States v. Crawford*, No. 17-4213 (4th Cir. Jan. 19, 2018).

At the end of the plea colloquy, the Court asked Mr. Crawford to confirm that the plea agreement, as described, was the agreement into which he wished to enter. *Id.* at 41. Mr. Crawford responded in the affirmative. *Id.*

The Court finds that the Rule 11 Hearing did not cure Mr. Crawford's counsel's deficient performance. *See Bui*, 795 F.3d at 367 ("the District Court's plea colloquy here did not serve to remedy counsel's error. Rather than correcting counsel's mistaken advice, several statements that the District Judge made during the plea colloquy serve to reinforce counsel's incorrect advice."). Repeatedly throughout the hearing, the Court and counsel made statements that were either incorrect and needed correction or were ambiguous; and these statements went to the core of the basis upon which Mr. Crawford's appeal was dismissed. Thus, even though the Court did ultimately clarify the waiver provision, in the context of the inaccurate advice provided before the hearing and the somewhat confusing exchanges taking place immediately prior, the Court's correct statement would not have clarified Mr. Crawford's understanding. *See id.* at 368 (finding that the statement in the plea colloquy did not remedy counsel's error because those statements "albeit reasonable and accurate statements under normal circumstances, are problematic" under the circumstances).

During the Motion Hearing, for the first time, Government counsel raised the novel argument that what may be read as confusion in the transcript was actually Judge Garbis's methodology for providing clarity; that the questioning approach being taken by the Court was that of a law professor using the Socratic method to help the students gain understanding and that those in the courtroom, including Mr. Crawford, understood it as such. To test this theory, the Court listened to the audio recording of the proceeding and could detect nothing in the tone of any of the speakers to change this Court's perception of the colloquy. More to the point,

however, the issue is not what Judge Garbis understood, it is what Mr. Crawford understood. And given that, unbeknownst to Judge Garbis, Mr. Crawford had been advised incorrectly by his counsel, the Court cannot find that the plea colloquy was so clear as to have left Mr. Crawford with an accurate understanding of the impact of the appeal waiver. It is for this reason the Court also rejects the argument raised by the Government that this Court is bound by the Fourth Circuit's finding that Mr. Crawford's appellate waiver was a knowing and voluntary waiver. Order at 1, *United States v. Crawford*, No. 17-4213 (4th Cir. Jan. 19, 2018). Without context, it is true that one could read the plea colloquy as eventually stating the plea terms accurately such that Mr. Crawford understood. But the Fourth Circuit did not have the benefit of an affidavit acknowledging that Mr. Crawford had been misadvised by counsel. This Court does and would have to suspend disbelief to arrive at the conclusion that the colloquy conducted here could leave Mr. Crawford with a clear understanding of the appellate rights he was waiving given what his counsel had advised him.

The Court finds that neither the clarity of the language in the waiver of appeal nor the discussion during the Rule 11 Hearing were sufficient to cure Mr. Crawford's counsel's deficient performance.

### 2. Appellate Deficiency

The Government also argued at the Motion Hearing, for the first time, that if Mr. Crawford's appellate counsel had "applied the right legal standard to 5K2.1 and its application, [Mr. Crawford] would have had [his] appeal[.]" ECF No. 588 at 35. In effect, the Government now claims that the Defendant could have appealed the second of the two alternative calculations that Judge Garbis used to enhance Mr. Crawford's sentence—that being the application of the U.S.S.G. § 5K2.1 enhancement—and that the Court of Appeals only dismissed the appeal

because Mr. Crawford did not raise that specific issue on appeal. Thus, the argument would conclude, any ineffectiveness on the part of Mr. Crawford's counsel was not at the trial level but at the appellate level. And, of course, the Government notes that ineffectiveness of appellate counsel was not an issue raised as a part of this motion and any such contention would now likely be time-barred.

While the Court agrees that Mr. Crawford may have had the ability to appeal Judge Garbis's alternative calculation under U.S.S.G. § 5K2.1, the Court does not find that ability cures the prejudice caused by the ineffectiveness of trial counsel. Simply stated, Mr. Crawford wished to preserve, and thought he had preserved, the ability to overturn a sentence calculated based on a finding that he was accountable for the murder of Mr. Wutoh. In order to overturn such a sentence, Mr. Crawford needed to preserve his ability to challenge both alternative sentencing calculations used by Judge Garbis. Even if Mr. Crawford had been able to successfully appeal one sentencing calculation, the Court of Appeals could have sustained the sentence based on the other calculation, *see, e.g., United States v. Gill*, 150 F. App'x 205, 207 (4th Cir. 2005) ("Under either a plain error or harmless error standard of review, in light of the identical alternative sentence imposed by the district court, we conclude that no reversible error occurred."), thus Mr. Crawford would have needed to run the proverbial table by succeeding on both issues. Consequently, even though Mr. Crawford may have had the ability to appeal the § 5K2.1 calculation, because he had not preserved—unbeknownst to him—his ability to appeal the murder cross-reference, the final offense level 31 would have stood. Thus, the Court finds there is a reasonable probability that Mr. Crawford would not have signed the plea agreement if he had known that—despite his counsel's assurances—he had not preserved both appellate routes, and, therefore, Mr. Crawford has shown he was prejudiced by his counsel's deficient performance.

*Strickland*, 466 U.S. at 693–94 (stating that a counsel's deficient performance is prejudicial when "there is a reasonable probability that, but for the counsel's unprofessional errors, the results of the proceeding would have been different").

Mr. Crawford has met both prongs of the *Strickland* test and thus has sufficiently shown ineffective assistance of counsel at the plea negotiation stage in violation of his Sixth Amendment rights.[9]

### D.     Remedy

Finally, the Court must consider the appropriate remedy. Mr. Crawford requests that the Court vacate his conviction and order a new trial as result of his counsel's ineffective assistance at the plea negotiation stage. ECF No. 562 at 1. The Government argues that such a remedy is "so disproportionate" because what Mr. Crawford is really saying is that he "didn't get the benefit of [his] appeal because [he] was misadvised." ECF No. 588 at 38–39.

"Sixth Amendment remedies should be 'tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests.'" *Lafler*, 566 U.S. at 170 (quoting *United States v. Morrison*, 449 U.S. 361, 364 (1981)). The remedy must "neutralize the taint of a constitutional violation[.]" *Id.* (internal quotation marks and citations omitted). In the context of ineffective assistance of counsel at the plea negotiation stage:

> When the misadvice of the lawyer is so gross as to amount to a denial of
> the constitutional right to the effective assistance of counsel, leading the
> defendant to enter an improvident plea, striking the sentence and

---

[9] Mr. Crawford also argued in his original Motion that his "trial counsel was ineffective in representing [him] in all aspects of sentencing" because they failed to adequately prepare for sentencing, failed to adequately investigate contested issues before and during sentencing, failed to challenge the Government's evidence at the contested sentencing hearing, failed to present arguments challenging sentencing enhancements, failed to prepare for sentencing, and failed to investigate and present mitigation evidence at sentencing. ECF No. 551 at 5–6. The Court does not find any evidence to support these claims and Mr. Crawford appears to have abandoned them in his subsequent Supplemental Memorandum of Law in Support of Motion to Vacate, Set Aside or Correct Sentence Pursuant to 18 U.S.C. § 2255. *See* ECF No. 562. Regardless, because the Court finds Mr. Crawford's counsel's inaccurate advice regarding the terms and consequences of the appellate waiver constituted ineffective assistance of counsel, it need not consider Mr. Crawford's alternative argument.

> permitting a withdrawal of the plea seems only a necessary consequence
> of the deprivation of the right to counsel. Deprivation of the constitutional
> right cannot be left unredressed. When it has occasioned the entry of a
> guilty plea, the inevitable redress is an order striking the plea or the release
> of the prisoner.

*Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979). In other words, "[t]he judgment of

conviction must be vacated when it appears, as here, that the guilty plea would never have been

tendered if the defendant had been properly advised by his lawyer." *Id.* at 64. Thus, the Court

finds that, since Mr. Crawford has sufficiently shown that his counsel's "erroneous advice

induce[d] the plea, permitting him to start over again is the imperative remedy for the

constitutional deprivation." *Id.* at 65.

Mr. Crawford will be allowed to withdraw his guilty plea to all counts.

***

One final argument that the Government raised is worth addressing as a concluding point.

At the hearing, the Government noted, with some understandable exasperation, that they were

actually disappointed in the sentence Mr. Crawford received and left the sentencing hearing

feeling as if they had lost, making the notion that Mr. Crawford received ineffective assistance of

counsel illogical.

The fact that Mr. Crawford's trial lawyers are well-respected, talented, and conscientious

is every bit as undeniable as the four core facts with which the Court began this opinion. It is less

relevant to the resolution of this motion, however. The Court has no doubt Mr. Crawford's

counsel served ably but they made a critical mistake, which they have candidly acknowledged.

Mistakes happen. But this mistake caused Mr. Crawford to enter into a plea agreement that he

otherwise would not have entered. Thus, for the purpose of this motion, Mr. Crawford received

ineffective assistance of counsel and will be placed back in the position he was in when the

ineffectiveness occurred.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 by a Person in Federal Custody, ECF No. 551, is granted. Thus, Mr. Crawford's conviction is vacated and his guilty plea is withdrawn.


Date: <u>April   28, 2021</u>

/s/_____
GEORGE J. HAZEL
United States District Judge